## BASYE v. JAMISON, *Appellant.*

### Division One, November 12, 1894.

1. **Contract:** FRAUD. The fact that one is a more skillful trader than another does not sustain the charge of fraud made by the latter as to the transaction in question.

2. ——: CONVEYANCE: ASSUMPTION OF DEBT: REDEMPTION. Defendant conveyed land to plaintiff who assumed a debt thereon, executed his note for the remainder of the consideration and secured it by a deed of trust on the land. Plaintiff not paying the assumed debt on its maturity, the land was sold therefor. Defendant became the purchaser, borrowed the money of C. and secured him by a deed of trust on the land. It was afterwards agreed that plaintiff could have till a certain day to redeem the land from defendant and to pay the original purchase price, but that if he did not redeem by that time he should relinquish all claim to the land. *Held,* that, in order to redeem, plaintiff must tender the amount secured to C. by the deed of trust as well as the remainder of the original purchase price still unpaid.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Charles Martin* and *Clark & Dempsey* for appellant.

(1) Courts of equity do not grant specific performance of contracts, except upon principles of justice and not as a matter of absolute right. *Veth v. Gierth,* 92 Mo. 97; *Taylor v. Williams,* 45 Mo. 80; *Fish v. Lightner,* 44 Mo. 268. Nor when the performance would render its enforcement harsh and inequitable. *Taylor v. Williams,* 45 Mo. 80; *Veth v. Gierth,* 92 Mo. 97; *Isaacs v. Skrainka,* 95 Mo. 517; *Taylor v. Von Schrœder,* 107 Mo. 207; *Datz v. Philip,* 21 Am. St. Rep. 864, and note; *Friend v. Lamb,* 34 Am. St. Rep. 672, and note; *Hess v. Evans,* 15 Atl. Rep. 310; *Clark v. Maurer,* 42 N. W. Rep. 522; *Parrott v. Baker,* 9 S. E. Rep. 1068; *Mangrof v. Muir,* 57 N. Y. 155. Nor where the party seeking performance has practiced deceit or fraud. *Brown v. Pitcairn,* 33 Am. St. Rep. 834. Even if such fraud is no injury to the defendant. *Kelly v. Railroad,* 5 Am. St. Rep. 470, and note; *Swint v. Carr,* 2 Am. St. Rep. 44. Nor will a contract be enforced which is purely speculative on the party who seeks its enforcement. *Townsend v. Goodfellow,* 40 Minn. 312. Nor when the party who seeks its performance entered into the contract in bad faith. *Palo Alto Co. v. Harrison,* 26 N. W. Rep. 16; *Clark v. Maurer,* 42 N. W. Rep. 522; *Jacobs v. George,* 20 Pac. Rep. 183. (2) There was no such tender by plaintiff as would entitle him to specific performance of the contract, whether we take Stewart's statement of amount offered, $800, or the defendant's version of amount offered, $500. Stewart's offer, whatever it was, was to cover balance on note, as well as repairs. No specific amount for either. Lawson on Contracts, secs. 416, 417; *Townsend v. Tufts,* 29 Am. St. Rep. 107; *Rose v. Duncan,* 49 Ind. 269. The amount due defendant

for repairs had not been ascertained and no offer to arbitrate was made. *Woodruff v. Woodruff*, 16 Atl. Rep. 4. The contract referring to deed of 1888, required the payment of the Ansley debt, and the Creech note given by defendant was but a substitution of the Ansley debt, and a tender which did not include that note and its payment was not a compliance with the terms of the contract. *Appeal of Alexander*, 12 Atl. Rep. 580; *Asken v. Carr*, 8 S. E. Rep. 74; *Wheeler v. Wheeler*, 2 N. Y. S. C. Rep. 496. And an offer to buy or assume the Creech debt was not a tender of payment. *Magmesson v. Williams*, 111 Ill. 450. Such contracts require strict compliance upon the part of those who seek to have them enforced by a court of equity. *Mason v. Payne*, 47 Mo. 517; *Huff v. Shepard*, 58 Mo. 242; *Cleary v. Folger*, 18 Am. St. Rep. 187. (3) Upon the principle that he who seeks equity should do equity the defendant should, in any event, have been allowed the value of the new houses, built by him on the land, worth $800 to $900.

*Joe Tapley* and *Fagg & Ball* for respondent.

(1) There is nothing in the record to sustain the charges of fraud against plaintiff. (2) The land affords ample security for the Creech note, and its payment is not included in the contract for the redemption of the land.

BLACK, P. J.—This was a suit for the specific performance of a contract for the conveyance of real estate. The facts leading up to the contract are to the following effect:

The defendant Jamison by his deed dated the fifteenth of February, 1888, and delivered on the twenty-seventh of April of that year, conveyed to the plaintiff

Basye and one Tombs about two thousand, two hundred and seventy acres of land, the grantees assuming and agreeing to pay taxes to the amount of $114, a note for $237, held by Baldwin and secured by a deed of trust on three hundred and eighty-five acres of the land, and a note for $3,948, held by Ansley and secured on the remaining one thousand, eight hundred and eighty-five acres. For the balance of the consideration the plaintiff executed to defendant his note for $2,700, and secured the same by a deed of trust on the undivided two thirds of the entire tract. This deed of trust was, therefore, a second incumbrance on the land. In a few days after this transaction Tombs conveyed his interest to the plaintiff Basye. Basye, the plaintiff, failed to pay the Baldwin debt as he had agreed, and allowed the three hundred and eighty-five acres to be sold under that deed of trust in March, 1889, and Mr. Robinson became the purchaser for and in the interest of the plaintiff. This sale was, however, made with the knowledge and consent of the defendant. The plaintiff, instead of paying the Ansley note as he had agreed, induced Robinson & Ferrell to purchase it, and they caused the one thousand, eight hundred and eighty-five acres to be sold under that deed of trust, on the ninth of April, 1889. The defendant did not consent to this sale as he did to the prior one, but he appeared thereat and became the purchaser of the one thousand, eight hundred and eighty-five acres at the amount of the Ansley debt and interest, namely, $4,427. To raise the money to pay his bid, he at the same time borrowed a like amount of Mr. Creech and gave his note therefor, due in one year, and secured the same by a deed of trust on the land so purchased. At the time the $2,700 note given by the plaintiff to the defendant and secured as before stated was due and remained wholly unpaid.

Matters stood in this complicated shape until the sixth of May, 1889, at which time the plaintiff and defendant signed the following agreement upon which this suit is based: "Said parties have agreed that Robinson shall make to D. W. Ward a quitclaim deed to the land purchased by him.   *   *   *   And the 'bus line, 'buses, horses, etc., which said Ward is trading for said land, shall become the property of said Jamison subject to the claim of said Robinson for the sum of $450 advanced by him; and it is agreed that the said Basye shall have till the ninth day of April, 1890, to redeem the land purchased by said Jamison at trustee's sale on the ninth day of April, 1889, that is, till the ninth day of April, 1890, to pay said Jamison the price agreed on between them when said Basye purchased said land on the — day of April, 1888; and in making said payment said Basye shall be given credit for the value of said 'bus line, 'buses, horses, etc., less $450 to be paid to Robinson, which value is to be fixed by arbitration on the fifteenth day of May, 1889, the said Basye to select one man and Jamison one, and they two, if unable to agree, to select a third, and the decision of any two agreeing to govern and stand as the award of the three.   *   *   *   And it is further agreed that if said Basye shall not redeem said land as herein above specified by the ninth of April, 1890, then he shall relinquish and release all claims to said land, and said Jamison shall surrender to said Basye his notes and relinquish to him all claims for the purchase price of said real estate.   If said Basye shall redeem as above provided, he is to pay interest on amount owing by him up to the time of redemption and is to allow said Jamison for necessary and reasonable repairs, and said Jamison is to pay reasonable rent for said premises from first day of March, 1889, till the time of redemption."

Pursuant to this agreement, Mr. Robinson conveyed the three hundred and eighty-five acres to Ward, and Ward turned over the omnibus line property to the defendant, who paid Robinson the $450. Arbitrators were chosen in due time, who fixed the value of the property at $2,630, and this valuation was in writing, accepted and agreed to by both plaintiff and the defendant. By this transaction the plaintiff became entitled to a credit of $2,180 in redeeming the one thousand, eight hundred and eighty-five acres, the legal title of which then stood in the defendant.

On the eighth of April, 1890, the plaintiff tendered the defendant $800 and demanded a deed, which tender the defendant refused, and hence this suit. The plaintiff did not pay off the Creech debt of $4,427; nor did he ever tender to Creech or the defendant the amount of that debt.

The trial court in stating the account, charged the plaintiff with the $2,700 note and interest, and deducted therefrom the $2,180 on account of omnibus line property received by the defendant, leaving a balance due the defendant of $739. To this amount the court added repairs and also $381, paid by defendant on the Creech note, and deducted therefrom rents of the farm, leaving a balance of $623.85, due to the defendant on the $2,700 note. The plaintiff paid this sum into court, and an order was made divesting the defendant of all title to the land and investing the same in the plaintiff, and awarding a writ of restitution.

1. The answer of the defendant sets out the contract, deeds and transactions before mentioned, and in connection therewith makes numerous averments of fraudulent conduct on the part of the plaintiff. According to the answer, these various transactions to which the plaintiff was a party, constituted one continuous scheme concocted and devised by the plaintiff to

cheat and defraud the defendant out of his property. From a careful examination of the evidence we conclude that these charges of fraud are not proved. The defendant, it is true, testified in broad terms that the contract upon which this suit is based was not his voluntary act; that Mr. Robinson held the title to the three hundred and eighty-five acres and threatened to sell that land and put the money in his pocket, and that he was forced to sign the contract and accept the omnibus line property at an overvaluation, in order to save his land. His own evidence and the other evidence in the case shows, however, that he agreed that Mr. Robinson should purchase that tract at the trustee's sale, that Mr. Robinson advanced the money to make the purchase and held the land much longer than he had agreed to hold it, that Mr. Robinson notified the plaintiff and defendant that they must pay him his advances. Pursuant to this notice the parties met, and the plaintiff and defendant then made this contract of sixth of May, 1889. It appears the defendant was more anxious to conclude the contract than was plaintiff, who had about concluded to abandon his purchase of the land. The omnibus line property was valued by persons chosen by plaintiff and defendant. The defendant then knew as much about the value of that property as he knew at any time thereafter. With this knowledge he in writing accepted the valuation fixed by the arbitrators, took that property, and has never returned or offered to return any part or portion of it. Whatever complaints the defendant may have had, on account of prior transactions, were settled by this contract, and the plaintiff is in no condition to assert its invalidity. The numerous charges of fraud set up in the answer and brought forward in argument stand unproved. The plaintiff appears to have been a shrewder trader than the defendant and that is all the

evidence shows to support these charges of fraud. The rights of the parties must, therefore, stand on the contract and the evidence in respect of its performance.

2.    The question then is, whether the plaintiff put himself in a position to demand specific performance of the contract of May 6, 1889.    In other words, was he bound to pay the Creech debt as a condition precedent to a conveyance from the defendant?    To an understanding of this question we may recall the prior transactions, dropping out of view the three hundred and eighty-five acres.    The plaintiff, in the original purchase of the entire lands, assumed and agreed, as a part of the consideration, to pay off the Ansley note secured by the deed of trust on the one thousand, eight hundred and eighty-five acres.    This he failed to do.    He caused the note to be purchased for and in his interest.    The purchase of this note by plaintiff or by others for him was not a payment of it.    The defendant was personally bound on that note, and held the second lien on the land for $2,700.    A payment of the note according to the contract would have relieved him of all personal liability and at the same time advanced his second lien to a first lien.    When the plaintiff caused the land to be sold under the Ansley deed of trust, he made breach of his contract, and the defendant had a perfect right to come forward and purchase at that trustee's sale as he did.    By his purchase at that sale he acquired a good title to the one thousand, eight hundred and eighty-five acres as against the plaintiff.    To raise the money to pay his bid he executed the Creech deed of trust.    Thus matters stood at the date of the contract of the sixth of May, 1889.

Turning to that agreement we find it provides that the plaintiff shall have until the ninth of April, 1890, the day on which the Creech note matured, to

"redeem" the one thousand, eight hundred and eighty-five acres, that is to say, "to pay to said Jamison the price agreed on between them" in the first deed. The agreement thus referred to provided that the plaintiff should pay $2,700, and pay off the Ansley debt. But when the contract now in question was made, the Ansley debt had been charged to the Creech debt. The meaning of the contract construed in the light of these then existing facts, is that plaintiff should pay the $2,700 note and interest and also the Creech debt. This reading of the contract finds support in the plaintiff's petition for he avers that he offered to pay that debt prior to the ninth of April, 1890. Indeed it is said in the brief of his counsel that "whatever may have been the relation of these parties previous to the making of the contract on the sixth of May, 1889, there can be no misunderstanding as to what it was after that. Basye was bound for the Creech note and whatever balance remained upon the $2,700 note after deducting the value of the 'bus line, horses, etc., which Jamison had agreed to take." This we accept as the true meaning of the contract.

The question then arises when was Basye bound to pay this Creech debt to entitle him to a deed from the defendant. As to this the contract says: "If said Basye shall not redeem said land as herein above specified, by the ninth of April, 1890, then he shall relinquish and release all claims to said land, and said Jamison shall surrender to said Basye his notes and relinquish to him all claims for the purchase price of said real estate." Nothing is more clearly expressed in the agreement than this, that Basye was bound to perform all agreements by him to be performed by the ninth of April, 1890, and this included the payment of the Creech note. The decree of the circuit court seems to go upon the theory that plaintiff was not bound to

pay that debt by the ninth of April, 1890, but that he had a right to have the title vested in him on payment of the balance due on the $2,700 note, leaving the Creech debt to stand as an incumbrance on the land and leaving defendant personally liable on that note. No such stipulation is to be found in the agreement. The want of such a stipulation is explained by the fact that defendant had suffered enough from the prior broken agreements of the plaintiff to assume and pay off incumbrances. The agreement clearly contemplates the payment of the balance of the $2,700 note, and also the Creech debt of $4,427, by the ninth of April, 1890. The plaintiff was bound to pay both debts, and that, too, within the specified time to entitle him to a reconveyance. This he did not do, nor did he ever tender or offer to pay the Creech debt, either to Creech or to the defendant. He is not, therefore, entitled to a deed from the defendant, and has no standing in a court of equity. The judgment is reversed and the petition dismissed. All concur.